We will next hear argument in Singh v. Mukasey. Good afternoon, Your Honors. Ina Lithgen on behalf of the petitioner. This is a petition for review following a dismissal by the BIA. And it's a matter of Bourbono dismissal. In this matter, the immigration judge made one supposition after another and could not articulate a clear basis for his incredibility finding. He latched on to minor mistakes, such as the petitioner's inability to recall the exact date of his arrest, which occurred 10 to 11 years prior to the hearing. He failed to also weigh the fact that this petitioner was completely uneducated and therefore could not answer with the same degree of sophistication that the IJ demanded. The Court has plenty of case law cited in our brief that mistaken dates is not a substantial reason for a denial. Counselor, first of all, I'll remark you're always here on a credibility issue. I think that's interesting. Yesterday you gave us the business on that. Isn't there a case law that suggests that a general unresponsiveness is enough on credibility? Isn't that Singh v. Ashcroft? Your Honor, petitioner does not deny that. I guess then, what is our standard review on that then? Isn't it that we have to find that there is no substantial evidence to sustain the decision on general unresponsiveness? No, Your Honor, because if you look at the record as a whole, he was not generally unresponsive. He was maybe a little vague in regards to the dates that he was arrested and only knew the year, but he was very responsive. That wasn't my question. I can understand that you may want to argue about whether he was generally unresponsive or not, but for me to determine whether someone is generally unresponsive or not, which is the decision of the IJ, I have to find that there is no substantial evidence in the record to suggest that, correct? That's correct. So in general then, the IJ said he couldn't remember the months of the persecution now, but did remember them for his application. He had no other problems with demonstrations other than one, even though he was the head of the organization for several of those demonstrations, and he had no answer for the fact this was the only one. This was the first arrest for demonstration. In other words, was it an arrest for demonstrating or was it an arrest for hiding militants in a rice paddy or keeping weapons for the militants? No medical records to confirm that the skull was fractured. However, his wife still lived in India, and he wouldn't admit to arrest in the United States only when asked by his own counsel. In other words, the IJ sets out all of these things, and then I'm to say there's no substantial evidence? Your Honor, if we look at all of these five or so grounds the IJ mentioned, it's easy to see where the IJ misconstrued the testimony and relied on speculation, if I may. In regards to the IJ's conclusion that the arrests were legitimate, completely unsupported by the record, and in fact the petitioner's testimony was very responsive on direct and on cross and to the IJ's questions regarding what was the motivation of the police at all times. And in correspondence to his written declaration, he always stated, their interest in me stemmed because of my activities for the Farmers Union, because we demanded rights. And the arrests were always a pretext with false accusations of aiding militancy in order to punish him for that participation in the union and to squelch his pro-farmer, anti-government activities. The proof of that is he at all times stated, they accused me of being a Khalistani, and he at all times explained being a Khalistani was what the government viewed as someone who was aligned with the militants and against the government, someone who wanted an independent Sikh state. The fact that he never articulated that as a leader of the Farmers Union he advocated a Sikh state, no, he advocated electricity and crop price fairness. So it's clear from his testimony alone, which was not challenged, that substantial part of the testimony, that he was falsely accused as a pretext because the government wanted to stop his, quote-unquote, anti-government activities. So actually he did establish that the government interest in him was illegitimate, and it's the IJ who mischaracterized his testimony. Therefore, his testimony was not unresponsive. If I may also comment on some of the other points Your Honor raised, as far as the medical records, this is a pre-real ID case, and taking aside the IJ's incorrect analysis, the respondent testified consistently. There was not one inconsistency that the IJ could hang his hat on because there weren't any in the record. Counsel, the one part that is particularly concerning to me is his denial that he was arrested in Tennessee. What do I do with that? Well, it's the petitioner's position that although he should have come forward when asked by the government attorney, in fact his arrest here is irrelevant to the claim of persecution on many factors. True, but it does cast a little shadow over your plan. I understand. I think that if the panel here takes the testimony as a whole, again, you cannot ignore the fact that he is completely uneducated, completely uneducated. And if you look at his responses to the government's questions, there should be some latitude given to him in his initial disavowal of any arrests in the United States. Again, it was for seemingly a brawl. The government didn't dispute that it was some sort of arrest that could somehow be a basis for the IJ to deny him asylum because of moral grounds or because it's an aggravated felony or something. And he was immediately released. I think because of the nature of this arrest and his lack of sophistication, I think the court can give him some latitude in that regard because it really didn't affect the case. Apparently the IJ denied him withholding because of that. No, voluntary departure. That's what I meant. Yeah, yeah, yeah. If I may also turn to the issue of the medical record. As I was stating earlier, because his testimony was completely consistent, consistent internally and with the declaration, and therefore credible, the fact that he was unable to produce a medical record, as this Court has found on numerous occasions, the lack of the production of such a record should not be a basis to find him incredible. Well, he was asked about it. And I think the way I read it, and maybe you can tell me if I have misunderstood it, is this particular IJ went through all these things and said, you know, maybe individually these things wouldn't be enough, but this cumulative picture we have here is what I'm putting together to find the – make the adverse credibility finding, but did seem particularly focused on something as significant as a skull fracture, that there was sort of like, oh, well, I just sort of woke up in the hospital, no big deal. But then, of course, that's a major deal. No follow-up care in the U.S., no medical records, and no real answer as to why. I think what I focused on, and maybe this is what I think the IJ was focusing on, was the failure to even respond to that question. Like, why don't you have medical records? Well, with all due respect, the fact is this incident occurred in 1992. The hearing was in 2003. There is no evidence in the record to show that he had continuing problems from that incident that caused the skull fracture, so there is nothing in the record to indicate he should have follow-up care. And most importantly, he was taken to this hospital by the police. He had to have the assistance of several individuals from the village to release him from the hospital. So it is very possible that he might not be able to even get a record of anything he wanted to. That's a different story. Now you're speculating what we ask the IJs not to do about possibilities. I mean, the IJ is just asking, you know, why don't you have a medical record? Just tell me the answer to that. Right. And then he's kind of temporizing and doing a little bit of shuffle on that, as he did on some other issues. So that was my impression. He didn't say I couldn't get a medical record or there's no hospital there or I might have been arrested if I asked. So how can we say that finding is not supported by substantial evidence? Well, again, it is a pre-real ID case, and the fact that his other testimony was consistent and credible and the other grounds for credibility were incorrect by the IJ. I think the fact that he was unable to get the record should not be held against him. And he did testify that his wife is there, and the record has the word indiscernible by the transcriber. So it's twice in the same answer. So it's kind of hard to catch the gist of why his wife wasn't able to get it. But in this case, petitioner asked for it to be remanded and maybe to explain or to get the record. However, once again, I don't think that he was required to get the record in light of the other credible testimony. Thank you. Thank you. May it please the Court. My name is Samia Nassim. I represent the Attorney General. The Attorney General respectfully requests that this Court deny the petition for review for two reasons. First, the record does not compel the conclusion that Mr. Singh established eligibility for asylum, withholding of removal, or cat protection, whereas testimony was found to be consistent and credible. He made repeated perjurious denials of his arrest in this country, and he failed to produce easily available corroborating evidence of his injury. Second, even if credible, the record does not compel the conclusion that Mr. Singh established eligibility for asylum, withholding of removal, or cat protection, where he testified that he was arrested and accused of harboring militants and their weapons, and he made no claim of arrests or harassment tied simply to his Farmers Union activities. Additionally, even if he established past persecution, the record does not compel the conclusion that he has a well-founded fear of future persecution, where he failed to provide evidence that he was a leader of a militant movement, where the record shows that only high-profile people are now targeted. Would you focus on this medical record issue, because his counsel says that there's no evidence that he could get the records. I mean, his wife, of course, is there, but there's no evidence that they're really available or records were made. Yes, Your Honor. The government understands that it's likely that Mr. Kumar, excuse me, Mr. Singh feared going back to the same hospital where he was taken by the police, and we understand that there was this indiscernible in the record. However, Mr. Singh has been in the United States and certainly could have gone to a hospital here for an X-ray, which would have certainly shown that he had sustained an injury to his skull at some point in the past, and he could have easily corroborated his claim without ever having to go back to that hospital in India. If the petitioner has not been challenged as to his credibility before the hearing, he might not have noticed that he needed to have documentary evidence outside of his testimony. Now, the IJ didn't give him an opportunity to go in the United States and get an X-ray and come back. Was there any suggestion that that should be done? Your Honor, the petitioner was adequately represented, and his attorney should have known that, you know, he had a questionable claim and that he should have had some corroborating evidence to support that claim. However, even without that aspect of the IJ's denial, the petitioner was adversely credible for various other reasons, including his repeated perjurious denial of his arrest in the United States. And that was a repeated denial. It was not just one time or initially. It was over and over that he denied having been arrested, having any recollection of an arrest, having any recollection of being fingerprinted. And it was not until his attorney had a final opportunity to go before the judge again and sort of, you know, coax it out of his client that he said that. So Mr. Singh has certainly established that he is not a credible witness and that he was not credible at his hearing, and his testimony was not credible, and he's not eligible for asylum, withholding of removal, or cap protection on that basis. But the – if we were to arrest the adverse credibility finding on what is the cleanest ground, which is the one you mentioned, having to do with the arrest in the U.S., that runs you square into the proposition that you should have your credibility findings based on something that goes to the heart of the matter. And that certainly doesn't go to the heart of his matter here. Certainly, Your Honor. There are other issues in the case that go to the heart of the matter. For example, the date of his arrest. I mean, certainly having been arrested, allegedly tortured, you know, held for eight days, these are great events in someone's life. Having your skull fractured, being kept in the hospital, these are great events in someone's life. Mr. Singh was unable to recall even the month of each of these arrests. Whereas, you know, in his initial claim, which he put before the – in his asylum application, he does remember those dates. So that goes to the heart of the claim that he does not, you know, despite the severity of these allegations, he does not even remember the date of those incidents. Further, he was repeatedly nonresponsive. He was often asked questions by the judge where he simply didn't respond or he made separate statements. You know, he was not able to recall his story with any kind of accuracy. You know, I think it's unfair for the I.J. to target him with unresponsiveness when he doesn't know why he wasn't arrested on some other occasions. That's knowledge that's only within the purview of the government itself. They maybe didn't have enough people. Maybe they didn't intend to arrest at that time because of political situations. None of this is anything that Mr. Singh should know anything about. So nonresponsiveness as to those questions seems to me very speculative. Your Honor, respectfully, the immigration judge is in the best position to make credibility determinations at the immigration hearing. And based on the entire record and all of the testimony that Mr. Singh gave, there were various occasions at which he was nonresponsive. And the respondent's position is that they weren't limited to questions about why he was not arrested on other occasions. However, it is noteworthy that Mr. Singh was not arrested despite having been the leader of several demonstrations, say five or six in 1992 and two or three in 1993, and he was only arrested on two occasions. Mr. Singh has not established that he's a credible witness in this case, and he's not established eligibility for asylum, withholding of removal, or cat protection. Barring any further questions from this Court,  Thank you. We have a moment for rebuttal, yes. I just want to respond to two items that the government attorney mentioned. Number one, there's a very good reason why this petitioner perhaps did not remember the months of his arrest all the way out in 2003. His application was prepared in 1993, the same year of his last arrest, so it's very feasible that at the time the application was prepared, ten years prior to the hearing, those events were more fresh in his mind. Ten years later, he doesn't remember them as well. I think that makes perfect sense. We also don't know whether he testified to the months during the asylum interview. That's not in the record. Second of all, regarding why he didn't have continuing treatment in the United States, on the record at page 102, he shows his head scar to the Court. That is some evidence that some sort of injury was made to his head. Thank you so much. Thank you both for your argument this morning. The case of Singh v. Mukasey is submitted.
judges: B. Fletcher, McKeown, N. R. Smith